IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LACEY WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:23-CV-697-KFP |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lacey White filed this action seeking review of the Social Security Administration's (SSA) decision to deny her application for supplemental security income (SSI). The Court construes White's supporting brief (Doc. 11) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 14) as a motion for summary judgment. After scrutiny of the record and motions submitted by the parties, the Court finds that White's motion is due to be DENIED, the Commissioner's motion is due to be GRANTED, and the decision of the Commissioner must be AFFIRMED.

## I.   STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.     PROCEDURAL BACKGROUND

White applied for SSI with an alleged disability onset date of December 31, 2008. R. 11. When her application and reconsideration appeal were denied, she requested a hearing before an ALJ. *Id*. Ultimately, the ALJ issued a decision finding White not disabled. R. 8–19. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. R. 1–4; *see* 42 U.S.C. § 405(g).

## III.     THE ALJ'S DECISION

The ALJ determined that White last met the insured status requirements of the Social Security Act on December 31, 2008. R. 14. She then found that White did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. The ALJ also determined that White had the following medically determinable impairments: degenerative joint disease of the metatarsophalangeal joints, congenital hyperextension of the knees, and seizure disorder. *Id*. Ultimately, the ALJ concluded that White did not have a severe impairment or combination of impairments. R. 16. Therefore, the ALJ determined White was not disabled. R. 19.

## IV.    DISCUSSION

White presents three issues on appeal: (1) the ALJ violated 20 C.F.R. § 404.935 when she excluded material evidence received after the hearing date and a month before her decision; (2) the Appeals Council erred when it denied review despite the additional evidence submitted to the ALJ after the hearing; and (3) considering the post-hearing evidence, the ALJ's decision is not supported by substantial evidence. Doc. 11 at 19.

### A.    The ALJ did not violate 20 C.F.R. § 404.935.

White argues the ALJ violated 20 C.F.R § 404.935 when she excluded the evidence White's attorney submitted after the hearing, a month before the ALJ issued her decision to deny White benefits. Doc. 11 at 2. In addition, White asserts that 20 C.F.R. § 404.935 is inapplicable and does not bar the ALJ from admitting the post-hearing evidence because she informed the SSA of the evidence in her initial social security application, placing the burden on the SSA to obtain some or all of the evidence. *Id*. Next, White asserts that she was unaware that the post-hearing evidence, which she had obtained over two years before the hearing, was not in the record at the time of the hearing. Finally, White argues that, even if 20 C.F.R. § 404.935 does apply to her, the ALJ still erred because she was required to accept the evidence pursuant to the 20 C.F.R. § 404.935(b)(3)(i) exception because her mental impairments prevented her from submitting the evidence earlier. The Commissioner argues White failed to meet her burden to produce evidence proving she had a medically determinable severe impairment during the relevant period, failed to demonstrate she was prejudiced by the ALJ's decision to exclude the post-hearing

evidence, and failed to show that the ALJ did not satisfy her duty to develop the record. Doc. 14 at 3, 8.[1]

> ### 1. White's reference to the post-hearing evidence in her SSI application does not satisfy the 20 C.F.R. § 404.935(a) requirement.

It was White's burden to produce evidence to prove her disability. If she could not produce the evidence, she was required to demonstrate that she made a good faith effort to obtain evidence and, despite those good efforts, could not obtain it on time.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Id*. The regulations state that "[a]lthough [the SSA] take[s] a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability . . . claims." *Soc. Sec. Ruling, Ssr 17-4p; Titles II & Xvi: Resp. for Developing Written Evidence*, SSR 17-4P (S.S.A. Oct. 4, 2017). "Consequently, [the SSA] expect[s] claimants and their representatives to make good faith efforts to ensure that [the SSA] receive[s] complete evidence." *Id*. "When [the claimant]

---

[1] For the Court to remand a case to the Commissioner for further development of the record, the Court must determine "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *See Graham v. Apfel*, 129 F.3d 1420, 1423 (internal quotation marks omitted). Because the Court finds the ALJ properly excluded the post-hearing evidence, the Court need not analyze whether White was prejudiced by the exclusion. It would be contrary to 20 C.F.R. § 404.935(a) if the district court's determination that an ALJ complied with the regulation when excluding evidence then resulted in the court reviewing the properly excluded evidence in the first instance. Further, White never alleges that she was prejudiced; thus, the claim is waived. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

fail[s] to cooperate with [the SSA] in obtaining evidence, [the SSA] will have to make a decision based on information available in [the claimant's] case." 20 C.F.R. § 416.916.

When a claimant requests a hearing with an ALJ, pursuant to 20 C.F.R § 404.935, the claimant:

> should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935(a).

White argues that 20 C.F.R. § 404.935 is inapplicable because she informed the SSA about the post-hearing evidence when she cited to the evidence in her SSI application. Doc. 11 at 10. However, 20 C.F.R. § 404.935 instructs claimants on submitting written evidence to an ALJ at the hearing stage; it does not address or create an exception for evidence mentioned in a SSI application. Merely citing to records in an application is insufficient to inform the ALJ about the written evidence later when a hearing is requested.

Additionally, White was represented by an attorney throughout these proceedings. In regard to representatives, SSR 17-4P explains:

> [I]t is only acceptable for a representative to inform us about evidence without submitting it if the representative shows that, despite good faith efforts, he or she could not obtain the evidence. Simply informing us of the existence of evidence without providing it or waiting until 5 days before a hearing to inform us about or provide evidence when it was otherwise available, may cause unreasonable delay to the processing of the claim, without good cause, and may be prejudicial to the fair and orderly conduct of our administrative proceedings.

SSR 17-4P (S.S.A. Oct. 4, 2017). White's attorney emailed the post-hearing evidence to the ALJ three weeks after the hearing and stated, "Please find enclosed additional VA records of treatment concerning Ms. White, dated July 27, 2001, through January 25, 2010, that Ms. White provided us. It does not appear these records are part of Ms. White's electronic file." R. 30. The email also directed the ALJ to an addendum from a clinical psychologist from March 2007. R. 30. Thus, White's attorney failed to inform the ALJ of the post-hearing evidence or submit the post-hearing records to the ALJ as required by 20 C.F.R. § 404.935(a).

> **2.    White had the post-hearing evidence in her possession at the time of the hearing and was aware that the post-hearing evidence was not in the record.**

White's arguments to excuse the failure to comply with the regulation are unavailing. First, White asserts that it was a "surprise" that the post-hearing evidence was absent from the record at the time of the hearing (Doc. 11 at 4) and states in the email submission to the ALJ that "it does not appear" the evidence was part of her file. The suggestion that she was unaware of the missing post-hearing evidence and only realized its absence after the hearing misrepresents the record. At the hearing, the ALJ asked White and her attorney multiple times about the 2008 evidence. The ALJ stated, "I wasn't really able to find anything for the 2008 date. There is stuff before. There is stuff after. Is there anything that really pinpoints into what her functioning was like at that time?" R. 188. In response, White's attorney stated:

> Judge, I don't see -- I didn't see 2008. I think that what's happened here is -
> - as I've talked about in my brief, where when they put her out here's a lot of

stuff or a lot of documents or statements about what her functional problems were when in the one in '03 and '05 *but I don't see anything in '08* but there's something that was going on in '11 that I -- let's see in -- but that's 2020. So, *Judge, I don't think we've got stuff in 2008*, but I do have a lot of stuff I wanted to talk about where military and civilian observed functional limitations in the pertinent timeframe.

R. 188–189 (emphasis added). Thus, the ALJ informed White's attorney that the record contained no documents from 2008, and the attorney confirmed the same—that there were no 2008 documents.

Additionally, the ALJ made several attempts to develop the record through questioning White and her attorney. For example, the ALJ asked White, "[A]s far as you can remember, you were not seeing any doctors for any of your health impairments around the 2008 time period. Is that – as far as you can remember, is that accurate?" R. 189. In response, White stated, "I'm not gonna say I wasn't seeing anyone" and "[i]t was very hard [] to get to [the doctors] living 80 something miles from the facility." R. 189. The ALJ noted, "[B]ut it looks like you were able to do it every other year . . . or most other years, so what changed?" R. 189. White responded, "Besides me, I don't know." R. 189. The ALJ then said, "Okay. I just want to make sure the record is complete." R. 189.

Later in the hearing, the ALJ again asked White and her attorney about the 2008 time period. R. 193. For example, she asked, "And just so I'm clear I just want to make 100 percent sure that, you know, we have everything that is obtainable . . . . Do you remember where you were living around 2008?" R. 193. White did not know where she was living in 2008 but said she lived with her mom for the past twenty years in different locations. R. 193–194. The ALJ also asked whether White had any recollection of her daily

activities or whether she was involved in anything in 2008, and White responded that she did not recall. R. 195. Then, the ALJ asked if she had ever been involved in any clubs, organizations, churches, community activities, or veterans' groups over the last 15 years or so. White said she was involved in a VFW for a little while but could not recall when. R. 195.

Finally, at the end of the hearing, the ALJ asked White's attorney, "Are we waiting on any additional records . . . or can the record be closed?" R. 202. White's attorney confirmed that the record could be closed and stated that he and White gave the ALJ all the evidence they had. R. 202. The ALJ closed the record. R. 203.

As discussed above, neither White nor her attorney informed the ALJ at the hearing that the post-hearing evidence existed. To the contrary, they expressly confirmed that they had submitted all the evidence to the ALJ, with no mention of the post-hearing evidence White had possessed for two years. In addition, the attorney's email to the ALJ provided no reason for their failure to timely produce the post-hearing evidence.

### 3.    White's argument that the 404.935(b) exception applies fails.

For the first time, in her brief to this Court, White provides a reason for not submitting the post-hearing evidence on time: her mental impairments prevented her from doing so. She asserts her mental impairments interfered with her ability to function and caused her limitation in her ability to understand, carry out, and remember instructions. Doc. 11 at 14–15.

The ALJ was not required to sua sponte go through each exception pursuant to 404.935(b) when no exception or justification was presented to her. It was White's burden

to inform the ALJ that the evidence existed. After missing the deadline, it was White's burden to inform the ALJ why she missed the deadline. Because she provided no justification and did not mention that her mental impairments prevented her from submitting the evidence, the ALJ was not required to review the evidence under 20 C.F.R. § 404.935, and the Court cannot reweigh the evidence now or decide in the first instance whether White had mental impairments that limited her ability to produce the post-hearing evidence. *See Haight v. Comm'r of Soc. Sec.,* No. 22-1364, 2023 WL 3467042, at *2 (6th Cir. Jan. 18, 2023) ("[S]ince Section 404.935 exists to ensure that petitioners supply ALJs with medical evidence in a timely manner, declining to admit untimely evidence *because of an unexplained delay is permissible*") (emphasis added).

### 4.    The cases White relies upon are unpersuasive.

In her reply, White points to *Jonathan V. v. Comm'r of Soc. Sec.*, No. 6:18-CV-1350 (TWD), 2020 WL 1270655, at *4 (N.D.N.Y. Mar. 17, 2020); *Long v. Commissioner of Social Security*, Case No. 1:20-CV-1490 2021 WL 2530216 (N.D. Ohio June 21, 2021); and *Easton v. Saul*, No. 4:18-CV-2289, 2019 WL 4697021, at *11 (N.D. Ohio Sept. 9, 2019), *report and recommendation adopted sub nom. Easton v. Comm'r of Soc. Sec.*, No. 4:18-CV-2289, 2019 WL 4694226 (N.D. Ohio Sept. 26, 2019), three non-binding cases, to show that the ALJ was obligated to consider the post-hearing evidence. Doc. 15 at 3–8. The Court finds these cases unpersuasive for the reasons discussed below.

In *Jonathan V.*, the claimant submitted evidence to the ALJ two weeks after his hearing and one month before the ALJ issued a decision. *Jonathan V.*, 2020 WL 1270655, at *4. The court found the ALJ did not address any violations of the 20 C.F.R. § 404.935(a)

five-day rule or any applicable 20 C.F.R. § 404.935(b) exceptions and held that "because the evidence was not addressed or exhibited by either the ALJ or the Appeals Council, it remains unclear if this additional evidence was ever properly considered by the Agency." *Id*. Although the *Jonathan V.* court did not reach a finding on the materiality of the evidence, the court remanded because the evidence directly contradicted portions of the ALJ's analysis.

The facts here differ from *Jonathan V.*, as the ALJ in that case did not mention the post-hearing evidence. White admits that "[u]nlike the instance case, in *Jonathan V.*, there was no discussion about whether the submission violated the 5-day rule." Doc. 15 at 4. Here, the ALJ discussed the post-hearing evidence and decided whether to admit the evidence pursuant to 20 C.F.R. § 404.935. She found the evidence was submitted in violation of the five-day rule and declined to admit it because the requirements of 20 C.F.R. § 404.935(b) were not met. R. 11. The ALJ explained:

> [T]he claimant's representative submitted additional records on February 28, 2023. No five-day letter was submitted prior to the hearing indicating that these records were outstanding. This case involves a date last insured that was over 14 years ago, so the task of obtaining old records should have been undertaken at the outset of the case, not after the hearing was held. The undersigned notes that the print date on the records is from well over two years ago, and the representative indicated that those records were in the possession of the claimant. Given the lack of five-day letter, the procedural posture of the case, and the fact that these records have been in the possession of the claimant for over two years prior to the hearing, there is insufficient justification for receiving these records. Therefore, they were not added to the record or exhibited.

R. 12. Thus, unlike in *Jonathan V.*, it is clear that the ALJ considered whether to admit the post-hearing evidence under the five-day rule. The regulation, 20 C.F.R. § 404.935(a),

explicitly states that the ALJ "may decline to consider or obtain the evidence" submitted "later than 5 business days before the date of the scheduled hearing." Accordingly, with White failing to demonstrate any good faith efforts to submit the evidence before the hearing and failing to present any exception, the ALJ was permitted to reject the post-hearing evidence, and the Court finds *Jonathan V.* unpersuasive.

Similarly, in *Long,* the claimant submitted evidence to the ALJ after the hearing but before the ALJ issued her decision. 2021 WL 2530216, at *3. The *Long* court found that the 20 C.F.R § 404.935(b)(3)(iv) exception applied and held that, because the claimant acted diligently to obtain the post-hearing evidence and submitted the evidence before the ALJ issued her decision, the ALJ was required to consider the records in evaluating her claim. *Id*. at 5. However, White's case differs from *Long*. The ALJ in *Long* did not mention the post-hearing evidence, and *Long* demonstrated that a § 404.935(b) exception applied. As discussed above, the ALJ in this case considered whether to admit White's post-hearing evidence but ultimately found that it did not meet the requirements of 20 C.F.R § 404.935(a) and that none of the § 404.935(b) exceptions applied. R. 11–12. This Court may not reweigh the facts to determine whether White's mental illness prevented her from submitting the evidence she had in her possession two years before the hearing. Thus, the Court finds *Long* unpersuasive.

Finally, White points to *Easton* as "an even more similar fact pattern." Doc. 15 at 6. In that case, the claimant informed the ALJ of additional evidence seven days before his hearing but submitted the evidence only one day before the hearing, and the ALJ excluded it. *Easton*, 2019 WL 4697021, at *11. The court there relied on the Hearings, Appeals and

Litigation Law Manual ("HALLEX") I-2-6-58, which states that, "[i]f a claimant or appointed representative informs an ALJ about evidence at least five business days before the date of the scheduled hearing, but does not submit the evidence at least five business days before the date of the scheduled hearing," then "the ALJ will . . . consider the evidence *regardless of whether the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply*." *Id*. The *Easton* court found the ALJ focused solely on the timing of the submission of the records and disregarded the fact that the claimant informed him of the records seven days before the hearing. *Id*. Because the claimant informed the ALJ of the post-hearing evidence seven days before the hearing, he complied with the five-day rule, and the ALJ was required to accept it. *See* 20 C.F.R. § 404.935(a). Thus, the ALJ in *Easton* failed to comply with the SSA's own regulations, and the court held this error was not harmless. *Id*. at 12.

White's case differs from *Easton* because, as discussed above, she failed to inform the ALJ of the post-hearing evidence before the hearing. White failed to comply with the five-day rule; thus, the ALJ was permitted to exclude the post-hearing evidence. Additionally, the court in *Easton* relied on the HALLEX, but White's reliance on *Easton* and the HALLEX is misplaced. First, as White recognizes, the Eleventh Circuit has not held that the HALLEX has the force of law. *See e.g., McCabe v. Comm'r of Soc. Sec., 661 F. App'x 596* (11th Cir. 2016) (stating that it "has not decided whether the HALLEX carries the force of law" but, even assuming that it did, finding no prejudice in failing to abide by the manual). In fact, most jurisdictions have held that HALLEX is not binding and has no force and effect. *See e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000) ("HALLEX does not carry the authority of the law"); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000)

(HALLEX is an "internal guidance tool," which "has no legal force and is not binding"). In sum, the Court finds the ALJ did not err by excluding the post-hearing evidence pursuant to 20 C.F.R. § 404.935(a) and is not swayed by the non-binding cases presented in White's reply.

Thus, the ALJ did not violate 20 C.F.R. § 404.935 when she excluded the post-hearing evidence received three weeks after the hearing.

### B. The Appeals Council did not err when it denied review of the ALJ's decision.

White also argues the Appeals Council erred when it denied review of the ALJ's decision despite the existence of the post-hearing evidence that, according to White, was new, material, and chronically relevant, necessitating the Appeals Council's review under 20 C.F.R. § 404.970(a). Doc. 11 at 15. The Commissioner argues the Appeals Council properly denied White's request for review and asserts that the post-hearing evidence was neither new nor material. Doc. 14 at 12.

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc., Sec. Admin.,* 496 F.3d 1253, 1261 (11th Cir. 2007)). "The Appeals Council has the discretion not to review the ALJ's denial of benefits." *Washington*, 806 F.3d at 1320 (citing 20 C.F.R. § 416.1470(b)). But the Appeals Council "must consider new, material, and chronologically relevant evidence" that the claimant submits, *id*. (citing *Ingram*, 496 F.3d at 1261; 20 C.F.R. §§ 404.970(b), 416.1470(b)), and there must be a

"reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). [2]

"When the Appeals Counsel refuses to consider new evidence submitted to it and denies review, that decision . . . is subject to judicial review." *Keeton v. Dep't of Health & Human Servs.,* 21 F.3d 1064, 1066 (11th Cir. 1994). Whether evidence submitted to the Appeals Council is new, material, and chronologically relevant is a question of law subject to the district court's de novo review. *Washington*, 806 F.3d at 1321.

White's argument pertains only to the post-hearing evidence she submitted to the ALJ.[3] Notably, White informed the Appeals Council that the post-hearing evidence was submitted to the ALJ "during the pertinent time frame post hearing but [was] not added to the exhibit list," but she failed to state that the evidence was "new, material, and chronologically relevant" so that it required the Appeals Council review. R. 441.

---

[2] As set forth in 20 C.F.R. § 404.970(b), "[t]he Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because: (1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to: (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person; (ii) There was a death or serious illness in your immediate family; (iii) Important records were destroyed or damaged by fire or other accidental cause; (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision."

[3] White submitted additional evidence (other than the post-hearing evidence) to the Appeals Council when she requested review. Specifically, "a statement from Leslie McDowell dated March 23, 2003 (1 page), a document from the Physical Evaluation Board dated March 3, 2001 (1 page), and a journal from the claimant dated January 27, 2007 (2 pages)." R. 2. The Appeals Council declined to exhibit the evidence because it did not show a reasonable probability that it would change the outcome of the decision. R. 2. White does not appeal that decision.

White now argues that the post-hearing evidence is material because it addresses the severity of her depression and seizures. She argues that it is chronologically relevant because it addresses the 2007, 2008, and 2009 time periods. Doc. 11 at 16. Critically, White fails to provide any support for the assertion that the evidence is new. Although the evidence may be material and chronologically relevant, the requirement that the evidence also be new is dispositive. The post-hearing evidence was submitted to the ALJ before the ALJ issued her decision. It was not submitted "to the Appeals Council after the ALJ's decision," as White claims; therefore, it was not new. *See Hyde v. Saul*, No. 2:18-CV-519-SRW, 2019 WL 4780797, at *3 (M.D. Ala. Sept. 30, 2019) (citing *Washington*, 806 F.3d at 1321 n.6.

Thus, the Appeals Council did not err when it denied review of the ALJ's decision.

**C.     Substantial evidence supports the ALJ's decision.**

Finally, White alleges that the post-hearing evidence prevents a finding that substantial evidence supports the ALJ's decision that her depression was not a medically determinable impairment or that her complex partial seizure was non-severe and did not significantly impact her ability to work. Doc. 11 at 3 (citing R. 15-17); Doc. 11 at 17. White's argument is premised on her assertion that the post-hearing evidence established that her depression was a medically determinable impairment and that her complex partial seizures were severe and significantly impacted her ability to work. However, as discussed above, the Court will not consider her post-hearing evidence as it finds that the ALJ appropriately excluded the evidence from the record. Thus, the Court must determine if the ALJ's decision is supported by substantial evidence based solely on the record before it.

1.      **Substantial evidence supports the ALJ's step-two determination.**

White argues the ALJ's severity determination of her seizure disorder and the medical determinability of her depression were wrong. This determination occurred at step two of the ALJ's sequential process.

At step two of the sequential evaluation process, the ALJ must determine whether an impairment is severe—that is, whether it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (citing 20 C.F.R. § 404.1520(c)); 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden of showing severity. *Mathews v. Eldridge*, 424 U.S. 319, 319 (1976). In evaluating step-two challenges, the district court must determine whether substantial evidence supported the ALJ's findings that an impairment was not severe and instead was only a slight abnormality that would not be expected to interfere with the claimant's ability to work. *Brady v. Heckler*, 724 F.2d 914, 920–21 (11th Cir. 1984).

Here, the ALJ found that through the date last insured, December 31, 2008, White had the medically determinable impairments of degenerative joint disease of the metatarsophalangeal joints, congenital hypertension of the knees, and seizure disorder. R. 14.

a.      **White's Depressive Disorder**

The ALJ determined that White's depressive disorder was not medically determinable as of the alleged onset date and date last insured. R. 14. She explained that "the medical evidence does not include any psychological testing or other medically acceptable laboratory diagnostic techniques required to show psychological phenomena

during a period materially proximate to the alleged onset date and date last insured."

Further, the ALJ noted that "the record contains treatment of depression that greatly

precedes the period at issue" (R. 14), including examinations and treatment from 1998,

2000, 2001, 2003, and 2005. The ALJ explained:

> [White's] depressive and personality disorders cannot be inferred to have
> continued as of the alleged onset date and date last insured in the absence of
> medical evidence as required by the [] regulations. Psychological disorders
> can wax, wane, and even remit over time. Therefore, her symptoms and
> limitations from 2005 are insufficient to establish their presence during the
> material timeframe of this claim, December 2008, without supporting mental
> status exams, psychological evaluations, objective signs, symptoms, or
> laboratory findings.

R. 15. In addition, the ALJ considered White's psychological examination in 2021, where

she was diagnosed with major depressive disorder and major neurocognitive disorder due

to a traumatic brain injury that occurred in the late 1990s. R. 15. The 2021 examiner opined

that, secondary to these diagnoses, White did not have the ability to understand, carry out,

and remember instructions or to respond appropriately to supervision, coworkers, and work

pressures. The ALJ found this opinion unpersuasive for two reasons. "First, the diagnosis

of neurocognitive disorder appears to be supported by the claimant's reports, not in depth

neuropsychological testing, objective signs, symptoms, or laboratory findings." R. 15

"Second, the presence of major depressive disorder in December 2021 does not support the

existence of this condition in the relevant period of 2008." *Id*. Thus, the ALJ ultimately

found there was insufficient evidence during the relevant time period to find that White's

depression was a medically determinable impairment.

"Under a substantial evidence standard of review, [White] must do more than point

to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Here, White points to the post-hearing evidence to demonstrate that her depression was a medically determinable impairment during the relevant time period, which the Court has found was properly excluded. She has not pointed to the absence of substantial evidence in the record before the ALJ. Thus, she has failed to meet her burden. Further, the ALJ's explanations provide the Court sufficient reasoning to determine the proper legal analysis has been conducted and substantial evidence supports the decision. *See Ingram*, 496 F.3d at 1260.

### b.    White's Seizures

White argues that the post-hearing evidence shows that her complex partial seizures are severe and significantly impact her ability to work. Doc. 11 at 17. For example, she states that her seizures cause her to be exhausted for 24 hours. *Id*. She also states that she complained of complex partial seizures several times a week and was told she could not drive until she was seizure free for six months. *Id*. at 18.

The ALJ considered several pieces of evidence regarding White's limitations including third-party statements made by two fellow soldiers, her former supervisor, and former employer; VA Office Treatment Records from September 2000 through October 2006 (R. 469–492); VA records concerning her disability ratings in 2001 and 2003; an EEG from 1996; the opinions of Drs. Andre J. Fontana (R. 205–210) and Victoria L. Hogan (R. 212–217), stage agency medical consultants; and White's testimony. The ALJ analyzed

the severity of White's seizure disorder and concluded, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to produce some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." R. 17. The ALJ further explained:

> The existence of a seizure disorder can also be inferred, but, again, the severity, frequency, level of control, and work restrictions related to a seizure disorder can vary greatly over time. Some individuals even attain complete remission and regain their drivers' licenses. Therefore, the undersigned is unable to draw a reasonable inference of more than minimal work restrictions related to this disorder at the time of the alleged onset date/date last insured.
>
> The conclusion that the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities as of the date last insured is consistent with the objective medical evidence and other evidence.

R. 18. In analyzing the two state agency medical consultants' (Dr. Fontana and Dr. Hogan) opinions, the ALJ noted that Dr. Fontana "opined that the claimant was restricted to less than the full range of light work secondary to physical impairments as of the date last insured." R. 18. "Subsequently . . . [Dr. Hogan] determined that the evidence was insufficient to determine the claimant's work-related functioning secondary to physical impairments as of the date last insured." *Id*. The ALJ concluded that Dr. Fontana's restriction to light work was "not supported by the medical evidence of record which contains minimal treatment leading up to the relevant period and which contains no objective exam findings to support the conclusion that the claimant was expected to experience more than minimal work-related restrictions for twelve continuous months

during the relevant period." R. 18–19. Thus, the ALJ concluded that Dr. Hogan's "determination of insufficient evidence . . . is more persuasive as it is better supported and more consistent with the medical evidence of record." *Id*.

The ALJ also reviewed an office treatment record from Dr. Kenneth A. Stone at the VA in January 2001, where, based on White's seizure disorder and chronic pes anserine bursitis, she was restricted to "no lifting, no weapons, and no duty where loss of consciousness would be dangerous." R. 469–72. The claimant was subsequently released from active service in June 2001. R 19. The ALJ found Dr. Stone's report unpersuasive because "it relates to the claimant's functioning seven years prior to the relevant period. At that time, the claimant had restrictions secondary to pes anserine bursitis, a condition that is not a medically determinable impairment during the relevant period." *Id*. Again, the ALJ noted that "there are no objective exam findings, lab findings, or symptoms in the record to support this level of restriction secondary to seizure disorder during the relevant period for the reasons described above." *Id*.

Finally, the ALJ considered the third-party statements from Brian K. Rodgers, one of White's former squad leaders (dated 2001) (R. 391); Pamela Smith, one of White's former squad leaders (undated but discusses seizure incident from 2001) (R. 397); Oscar Carr, a sergeant who worked with White (dated 2001) (R. 392); Bonnie Brown, White's former supervisor (dated 2003) (R. 393); Barbara Stone, White's former employer (dated 2003) (R. 394); and Margaret White, White's mother (dated 2023) (R. 433–434). The ALJ found the statements unpersuasive "as to the claimant's functioning during the relevant

period as they generally pertain to the claimant's functioning several years outside of the relevant period." R. 19.

The ALJ's explanations provide the Court sufficient basis to determine the proper legal analysis has been conducted. *See Ingram*, 496 F.3d at 1260. Additionally, and as discussed above, White fails to meet her burden to demonstrate that substantial evidence does not support the ALJ's determination that her complex seizure disorder was not severe. Again, White merely points to examples from the post-hearing evidence to argue the ALJ's decision is not supported by substantial evidence. She does not "show the absence of substantial evidence supporting the ALJ's conclusion." *Sims*, 706 F. App'x at 604. The Court finds that substantial evidence supports the ALJ's determination that White's seizure disorder is non-severe.

## V.    CONCLUSION

For these reasons, it is ORDERED as follows:

1.      White's motion for summary judgment (Doc.11) is DENIED.

2.      The Commissioner's motion for summary judgment (Doc. 14) is GRANTED.

3.      The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

 DONE this 12th day of June, 2024.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE